CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 2 2 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHEN K. HSU, <br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF STAUNTON, <br><br> *Defendant.* | CIVIL ACTION NO. 3:05-CV-00037 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendant's Motion for Summary Judgment, filed March 1, 2006. By order of the Court entered March 30, 2006, and pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiff Chen Hsu ("Hsu") was granted until August 15, 2006, to respond to Defendant's motion. Hsu filed a response in opposition on August 15.

On July 25, 2006, Defendant filed a motion for sanctions alleging that Hsu without excuse had failed to appear at a properly noticed deposition. Magistrate Judge Crigler heard argument on this motion and, finding in Defendant's favor, entered an Order on August 16, 2006, prohibiting Hsu from offering "any oral or affidavit evidence countervailing that offered by defendant in support of its motion for summary judgment or at trial."

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the Court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798

1

(4th Cir. 1994) (citations omitted).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'... an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but... [must] by affidavits or as otherwise provided in... [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Hsu brought this 42 U.S.C. § 1983 action claiming that Defendant, the City of Staunton (the "City"), violated her Fourteenth Amendment equal protection rights by refusing without legitimate reason to re-inspect property that she owned or to release it from condemnation because of her status as a "Chinese American woman." Complaint, ¶¶ 33-36. She further alleges that the City failed previously to condemn the same property when it was in the same or a similar condition but owned by a Caucasian male. *Id.*, ¶ 34.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause applies to political subdivisions of states such as cities. *Avery v. Midland County*, 390 U.S. 474, 480 (1968).

A successful equal protection claim requires proof that the claimant "'has been treated

2

differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Equal protection claims alleging selective enforcement of a facially neutral law are subject to these same principles. *See Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995); *Hyatt v. Town of Lake Lure*, 225 F. Supp. 2d 647, 660 (W.D.N.C. 2002). If the administration or enforcement of a facially neutral regulation favors one class of persons and disfavors another, it may run afoul of the Equal Protection Clause, but only if the plaintiff establishes that the administrative action "was motivated, at least in part, by an 'invidiously discriminatory' intent." *Sylvia*, 48 F.3d at 819. Factors viewed as probative of whether an administrative action was motivated by a discriminatory intent include:

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

*Id.*

Setting aside, without deciding, the issue of whether Hsu has offered sufficient evidence that she been treated differently from her Caucasian male predecessor owner, it is abundantly clear that she has failed to point to any competent evidence concerning an element essential: discriminatory intent. In a detailed affidavit, Cynthia Easterling, who has served as a Property Maintenance Inspector for the City's Planning and Inspection Department at all times relevant to Hsu's claim, explains that her actions citing Hsu for numerous Building Code violations and eventually initiating condemnation proceedings were motivated "solely as a result of the condition of [Hsu's] properties, the multiple violations of the Staunton City Code found upon

3

inspection of the properties, and the fact that Hsu attempted to lease the properties after they were declared unfit and uninhabitable." D. Mot. S.J., *Easterling Affidavit*, ¶19.

Easterling recounts that she first inspected Hsu's Kalorama Street and Coalter Street properties pursuant to tenant complaints on July 14, 2003, and July 21, 2003, respectively. *Id.*, ¶¶3-7. Having found multiple violations of the City's Housing Code at each location, Easterling sent Hsu separate Notices of Violation detailing the code violations. *Id.*, ¶¶4, 12, Exhs. A,[1] B[2]. On July 23, 2003, Easterling met with Hsu and her handyman on site at both properties. *Id.*, ¶8. Hsu informed Easterling that she would bring both properties up to Code and evict the existing tenants, and asked for additional time to make necessary repairs—which request was granted on condition that Hsu would not allow either structure to be occupied. *Id.*

On August 4, 2006, Easterling learned from a departing tenant that a new tenant had moved into the Coalter St. property, which information she confirmed in person by visiting the property. *Id.*, ¶9. The new tenant said she did not intend to stay at the Coalter Street apartment, but would be moving to Hsu's Kalorama Street property. *Id.* During Easterling's visit, an upstairs water pipe burst and started leaking into the first floor apartment, and a gentleman arrived who said he was there to meet with the owner to rent an apartment. *Id.*

As a result of these events, and the prior inspections, Easterling that same day sent Hsu separate Notice of Unsafe Structure letters and directed that both the Coalter and Kalorama Street properties be placarded as unsafe or unfit for habitation. *Id.*, ¶¶11-12, Exhs. C, D. The letters

---

[1] Among other violations listed, the Kalorama Street property allegedly had an inadequate heating supply; improperly installed gas stove (including gas line) and bathroom exhaust system; and unsafe electrical wiring.

[2] Among other violations, the Coalter Street property allegedly had no hot water, plumbing leaks, kitchen sink that did not drain, an improperly installed bathroom sink, gas line leaks, and plumbing and electrical systems in need of repair.

4

listed specific code violations, noted that violations needed to be corrected within thirty days, and warned that "the City may take action to have the violation abated" and that failure to take corrective action "may result in this matter being forwarded to legal counsel for action." *Id.*, Exhs. C, D.

When Easterling later went to post a notice of condemnation on the Coalter Street property, Hsu asked that she reinspect the property. *Id.*, ¶14. Easterling declined, explaining that the utilities needed to be on so that she could verify that they were in working order. *Id.* By letter dated September 8, 2003, Easterling explained that all utilities needed to be on as a precondition of re-inspection, invited Hsu to call her office 24 hours in advance to schedule an appointment, and reminded her that the properties were to remain uninhabited while condemned. *Id.*, ¶15, Exh. E. Hsu scheduled an appointment for a re-inspection to be conducted September 12, 2003, but did not appear for the inspection. *Id.*, ¶17.

Easterling learned sometime in August that a new tenant, who provided her a copy of a 6-month lease evidencing a tenancy starting August 28, 2003, had moved into the Coalter Street property; she also later learned that on September 9, 2003, another tenant had contacted the City's water department to have the water turned on, stating that he was a tenant at Coalter Street. *Id.*, ¶¶15-16, Exh. F.

Easterling avers that none of the above-described actions "were motivated or influenced in any way by the ethnicity, country of origin, or gender or the owner, Chen K. Hsu." *Id.*, ¶20.

Hsu argues that a material issue on the issue of discriminatory intent exists because of (i) the inference that can be drawn from the disparate treatment she received from the City, and (ii) her allegation that the City preconditioned reinspection on her having the utilities turned back on while knowing that this condition was impossible to meet.

5

Hsu admits that the predecessor owner of the properties, Robert Huffman, received a notice of violation dated July 15, 2002, stating that the Coalter Street property was unsafe and uninhabitable, and giving him seven days to secure the property. *Response* at 5; *Easterling Affidavit*, ¶22, Exh. G. As evidence of disparate treatment, she emphasizes, however, that Huffman's notice did not enumerate a list of code violations as did her own notice, and that the City admitted that it "has no knowledge of what actions Mr. Huffman took, if any, to remedy the situation after the July 15, 2002 Notice of Violation."

The City's failure to enumerate numerous violations in Huffman's notice is not discriminatory, much less probative of discriminatory intent, absent any evidence that the difference in the two notices had any legal consequences or that the Coalter Street property was in fact in the same or similar condition at the times the notices were sent. Many, if not all, of the violations listed could have developed over the course of a year. *See Easterling Affidavit*, Exhs. A, B. Plaintiff does not deny the existence of any of the violations, or her failure to comply with Easterling's directive to keep her properties uninhabited.

The City's apparent failure to follow-up on with Huffman beyond having the property "vacated" and "secured" also is of little probative value.[3] "[A] plaintiff alleging an Equal Protection violation actionable under § 1983 must establish that the differential treatment it was afforded was intentional, not the result of mere negligence." *C & H Co. v. Richardson*, 78 Fed. Appx. 894, 902 (4th Cir. 2003) (unpublished opinion). Although the City's action may at worst be described as negligent, Plaintiff has failed to come forth with any evidence establishing one of the factors cited in *Sylvia*, or any other factor, that is probative of intentional discrimination.

---

[3] Easterling did not address why the Coalter Street property was not condemned after the City issued Huffman the July 15, 2002 Notice of violation declaring the property unsafe and uninhabitable and had it vacated and secured. *Easterling Affidavit*, ¶22.

6

As for the City's alleged placement of an insuperable obstacle to re-inspection, pursuant to the Magistrate's August 16, 2006 Order the Court shall not consider Hsu's statements in support of this allegation. Without more, no inference of discriminatory intent can be drawn from Easterling's reasonable request that Hsu have all utilities turned on prior to re-inspection.

Plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial," and as such, the City's motion for summary judgment must and will be GRANTED in an order to follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

*August 22, 2006*
Date